UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEREK SUTTON, as special administrator of the ESTATE OF WILLIAM PEPPER, | No.  CV-10-3067-EFS |
| Plaintiff, | **ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| RENAL TREATMENT CENTERS WEST, INC., a foreign corporation, and DAVITA, INC., a foreign corporation, | |
| Defendants. | |

## I.    **INTRODUCTION**

This suit arises from the death of William Pepper after he received kidney dialysis treatment at a facility owned and operated by Defendants Renal Treatment Centers West, Inc. and DaVita, Inc., on January 8, 2009.  Plaintiff Derek Sutton, the administrator of Mr. Pepper's estate, alleges that Defendants' employees did not properly monitor Mr. Pepper during treatment.  Plaintiff contends that Defendants' employees failed to notice that Mr. Pepper's venous needle had become dislodged during dialysis treatment, which allegedly resulted in extensive blood loss and caused Mr. Pepper's death.

One of Plaintiff's theories of liability is that Mr. Pepper's dialysis "access" – the location on his body in which arterial and

venous needles were inserted to provide dialysis treatment – was not visible at the time of his exsanguination.  Plaintiff alleges this lack of visibility breaches the appropriate medical standard of care.

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment, ECF No. 64.  Defendants assert that a) Plaintiff has no direct evidence that Mr. Pepper's dialysis access was not visible, and b) any circumstantial evidence of a lack of access visibility is speculative or otherwise inadmissible.  Defendants seek to preclude any claim or argument relating to the visibility of Mr. Pepper's dialysis access at trial.

For the reasons set forth below, the Court finds that a genuine issue of material fact precludes summary judgment at this time.  Defendants' motion is therefore denied.

## II.  <u>BACKGROUND</u>[1]

On the morning of January 8, 2009, William Pepper began outpatient dialysis treatment at the Yakima Dialysis Center (hereinafter, "DaVita"), a medical facility owned and operated by Defendants.  At the time of his treatment, Mr. Pepper exhibited signs of poor health: he was receiving controlled delivery of oxygen, and he required significant assistance to move himself into the dialysis

---

[1] In ruling on the motion for summary judgment, the Court has considered the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, and depositions, in the light most favorable to the party opposing the motion – here, the Plaintiff.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

chair to receive treatment. Some DaVita staff members expressed concern that Mr. Pepper was receiving outpatient – as opposed to inpatient – dialysis treatment, given his poor condition. Customarily, dialysis patients who are more fragile or ill require a higher level of supervision than healthier patients, and thus receive inpatient treatment.

At approximately 1:55 p.m. that afternoon – several hours into Mr. Pepper's dialysis treatment – DaVita's medical staff discovered that Mr. Pepper was unconscious and not breathing. A large amount of Mr. Pepper's blood had pooled on the floor beneath his dialysis chair, and blood also covered the chair itself and Mr. Pepper's clothes. Upon discovering his condition, DaVita staff began treating Mr. Pepper. Although Mr. Pepper briefly regained consciousness, he was subsequently transported to Memorial Hospital, where he died at 9:20 p.m. that evening.

At the time Mr. Pepper exsanguinated, many DaVita staff members were participating in a "mock audit" in preparation for an actual upcoming audit by the Washington State Department of Health ("DOH"). During this mock audit, only two patient care technicians ("PCTs") were assigned to the treatment "pod" in which Mr. Pepper and six other dialysis patients were receiving treatment. One of the PCTs, Mauro Hernandez, was on break and not in the treatment area at the time Mr. Pepper exsanguinated, although the parties dispute how long Mr. Hernandez had been on break before the incident occurred. The other PCT, Bonnie Hursh, was connecting another patient to a dialysis machine at the time of the incident.

1    In  response  to  Mr.  Pepper's  death,  DOH  began  investigating
2    DaVita's  patient  safety  practices.    Several  weeks  following  Mr.
3    Pepper's  death,  DOH  investigators  visited  the  DaVita  facility  and
4    found  that  the  dialysis  accesses  of  four  separate  patients  were  not
5    visible  to  facility  staff  at  all  times  during  treatment.    DOH  also
6    interviewed  the  facility's  administrator,  Shomei  Meister,  and
7    determined  that  she  did  not  know  the  proper  definition  of  "visible  at
8    all  times"  with  regard  to  a  patient's  access.    DOH  concluded  that
9    DaVita's  policies  and  procedures  did  not  properly  define  – and  that
10   facility  staff  did  not  have  a  clear  understanding  of  what  constituted
11   – a  "visible  dialysis  access."

## III. DISCUSSION

**A.  Legal Standards**

14         Summary  judgment  is  appropriate  if  the  "pleadings,  the  discovery
15   and  disclosure  materials  on  file,  and  any  affidavits  show  that  there
16   is  no  genuine  issue  as  to  any  material  fact  and  that  the  moving  party
17   is  entitled  to  judgment  as  a  matter  of  law."    Fed. R. Civ. P.  56(c).
18   Once  a  party  has  moved  for  summary  judgment,  the  opposing  party  must
19   point  to  specific  facts  establishing  that  there  is  a  genuine  issue  for
20   trial.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).   If  the
21   nonmoving  party  fails  to  make  such  a  showing  for  any  of  the  elements
22   essential  to  its  case  for  which  it  bears  the  burden  of  proof,  the
23   trial  court  should  grant  the  summary  judgment  motion.    *Id.* at 322.
24   "When  the  moving  party  has  carried  its  burden  under  Rule  56(c),  its
25   opponent  must  do  more  than  simply  show  that  there  is  some  metaphysical
26   doubt  as  to  the  material  facts.  . . . [T]he  nonmoving  party  must  come

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 4

forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citation omitted) (emphasis in original).

When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.242, 255 (1986). Courts are to be cautious when granting summary judgment and may deny summary judgment "where there is reason to believe that the better course would be to proceed to a full trial." *Id.*

**B.  Analysis**

Defendants seek partial summary judgment on the issue of whether Mr. Pepper's dialysis access was visible at the time of his exsanguination. Defendants assert that a) Plaintiff has no direct evidence that Mr. Pepper's dialysis access was *not* visible, and b) that any circumstantial evidence on this point is speculative or otherwise inadmissible. Defendants therefore seek to preclude any claim or argument relating to the visibility of Mr. Pepper's dialysis access at trial.

In response, Plaintiff points to circumstantial evidence of a visibility issue, including, *inter alia*, the opinion of Plaintiff's proffered expert, Tricia West, R.N. Defendants deposed Ms. West on January 11, 2012. During that deposition, Ms. West opined that Mr. Pepper's substantial blood loss was, by itself, evidence of a problem with the visibility of Mr. Pepper's access:

```
1          Q.    Now, you've, I think, inferred from the fact that Mr.
                 Pepper's needle dislodged and he lost blood that it
2                was not properly being visualized.  Are you aware of
                 any evidence showing there was any problem with
3                visibility of Mr. Pepper's access either on the [date
                 of the incident] or ever?
4          A.    Yes.
           Q.    What is that evidence?
5          A.    The evidence is that no one recognized that there was
                 a thousand cc's of blood missing out of the patient
6                . . .
```

7    West Dep. 65:7-17, ECF No. 68, at 61.

8         Ms. West later clarified her opinion that Mr. Pepper

9    exsanguinated because either Mr. Pepper's dialysis access was not

10   visible, or DaVita's medical staff was not properly monitoring his

11   treatment:

```
12         Q.    Okay.  And I asked you before whether there's any
                 evidence for lack of visibility of Mr. Pepper's
13               access.  You agreed there was no direct evidence that
                 his access was not visible.  Mr. De La Cruz just
14               clarified that, I think, with you.
           A.    Something was not right.  Was it not visible, or were
15               they not looking?  I can't answer that, but clearly
                 it wasn't visualized.  I don't know [if it was]
16               because it was hidden or [if it was] because nobody
                 was even there to look at it.  Equally as bad.
17         Q.    But you agree there was no direct evidence of a
                 problem with visibility.  Now –
18         A.    No, no, no, no.  I don't agree with that.  There was
                 a problem with visibility.  The problem was *either*
19               *nobody was looking, or it wasn't visible*.
```

20   *Id.* 118:4-18, ECF No. 68, at 62 (emphasis added); *see also* West Decl.

21   ¶ 10, ECF No. 74, at 5-6 ("I believe that [had Mr. Pepper's] access

22   been visible and [had DaVita's staff] observed the dislodged needle,

23   they would have intervened and stopped the blood loss.").

24        Defendants argue that Ms. West's opinion about these two

25   potential causes for Mr. Pepper's exsanguination amounts to

26   impermissible speculation.  The Court disagrees.  Ms. West's opinion

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 6

that exsanguination would not have occurred *but for* one of these two preconditions is a medical opinion as to causation. Ms. West has not speculated about which precondition actually occurred, *see id.* ("Was it not visible, or were they not looking? I can't answer that[.]"); for that matter, she has not opined about which precondition was more likely to have occurred. Instead, she indicates that this accident could *not* have occurred *unless* one of these preconditions was satisfied. There is nothing speculative about this opinion.

Moreover, Defendants are free to challenge the admissibility of Ms. West's opinion pursuant to Federal Rules of Evidence 702-704 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Defendants may also offer their own expert opinions as to causation, or they can demonstrate the fallacy of Ms. West's opinion by proffering other reasons, beyond the two given by Ms. West, why Mr. Pepper exsanguinated. In other words, Ms. West's opinion – that one of the two preconditions must have been satisfied for the injury to have occurred – can be tested, challenged, and ultimately discredited or disproved. It is not speculation.

At present, Ms. West's opinion is sufficient to warrant denial of Defendants' motion for summary judgment. Plaintiff contends, and Defendants apparently do not dispute, that *either* precondition would independently constitute a breach of the standard of care Defendants owed to Mr. Pepper. *See, e.g.*, Plf.'s Opp'n Mem. at 15 ("[B]oth scenarios amount to a breach in the standard of care."). Under this theory, Plaintiff need not offer any evidence that Mr. Pepper's access was not visible. Instead, Plaintiff can prove that 1) Mr. Pepper

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 7

exsanguinated, 2) he would not have exsanguinated unless either a) his access wasn't visible or b) Defendants' employees were not properly monitoring his treatment, and 3) either of these potential causes constitutes a breach in the standard of care Defendants owed to Mr. Pepper.   As long as Plaintiff can show that at least one of the preconditions occurred, and as long as either precondition independently constitutes a breach in the standard of care, the determination of *which* specific precondition actually occurred is immaterial: either way, Defendants were negligent.

Alternatively, even if only the first precondition (that Mr. Pepper's access was not visible) constitutes a breach in the standard of care, Defendants are still not entitled to partial summary judgment.   Given Ms. West's opinion that at least one of the preconditions must have occurred, Plaintiff can prove that Mr. Pepper's access was not visible by *disproving* the other precondition (e.g. by showing that Defendants' employees *were* properly monitoring Mr. Pepper).   Put another way: if at least one of the two preconditions must have occurred to cause Mr. Pepper's exsanguination, and if the second precondition is disproved, by process of elimination, the first precondition must have occurred.[2]

//

//

---

[2] *See, e.g.*, Sir Arthur Conan Doyle, *The Sign of Four* 111 (1890) (containing the oft-quoted truism by legendary fictional detective Sherlock Holmes, that "when you have eliminated the impossible, whatever remains, however improbable, must be the truth").

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 8

### IV.    CONCLUSION

Ms. West's opinion offers Plaintiff a sufficient factual basis to present his claim that Mr. Pepper's access was not visible to the jury.  The Court therefore need not reach Plaintiff's argument that the DOH investigation report also provides sufficient circumstantial evidence of an access visibility issue, and whether the report is admissible for that purpose.  Because Plaintiff has demonstrated a genuine issue of material fact on the question of access visibility, Defendants are not entitled to partial summary judgment.

This ruling does not preclude Defendants from challenging Ms. West's opinion, either procedurally in a *Daubert* hearing or substantively at trial.  And if successful, Defendants remain free to move for a directed verdict on this issue.  In the meantime, however, Defendant's motion, **ECF No. 64**, is **DENIED.**

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this _12th_ day of February 2013.


                              s/ Edward F. Shea
                         _____
                              EDWARD F. SHEA
                       Senior United States District Judge


Q:\EFS\Civil\2010\3067.partial-msj.deny.lc2.docx

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 9